UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FRANK JAMES OSLZLY,

                      Plaintiff,

- against -

LAWRENCE ROSENBLATT, Directory Bowery
Residents Committee; CYNTHIA DUKAS,
Independent Living Specialist; MARILYN FULTON,
Independent Living Specialist; ANNA HINOHARA,
Facility Psychiatrist; JASMINE TUDD, Manager;
CHRISTOPHER LAING, Clinical Supervisor;
UNKNOWN EMPLOYEE 1, 'Todd' (Kelly?);
UNKNOWN EMPLOYEE 2, 'short with dreadlocks'
possible homeless services police; UNKNOWN
EMPLOYEE 3, 'tall, shaved head, pigeon-chested'
possible homeless services police; UNKNOWN
EMPLOYEE 4, 'petite' nursing staff; BOWERY
RESIDENTS COMMITTEE, INC; NEW YORK CITY
DEPARTMENT OF HOMELESS SERVICES; NEW
YORK HUMAN RESOURCES ADMINISTRATION,

                      Defendants.
------------------------------------------------------------X


FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 19 2014 ★
BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

14-CV-3638 (SLT)(LB)

**TOWNES, United States District Judge:**

      Plaintiff Frank Oslzly, a homeless man with a history of mental illness, brings this *pro se* action pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, against Bowery Residents Committee, Inc. (the "BRC"), which operates shelters in which he lived; the New York City Department of Homeless Services ("DHS"), which referred him to the BRC; the New York City Human Resources Administration ("HRA"); and ten individuals. Plaintiff's request to proceed *in forma pauperis* is granted. For the reasons set forth below, however, plaintiff's claims against defendants Rosenblatt, Dukas, Fulton, Laing and the four "unknown employees" listed in the caption of the complaint are dismissed without prejudice, as

are plaintiff's claims under Title II and/or Title III of the ADA. Plaintiff is granted leave to file an amended complaint within thirty (30) days from the date of this Memorandum and Order.

## *BACKGROUND*

The following facts are drawn from plaintiff's complaint, the allegations of which are assumed to be true for purposes of this Memorandum and Order, and the exhibits attached to that complaint. On January 23, 2014, plaintiff returned to the United States from a prolonged stay overseas, during which he was "hospitalized in the neurological ward of a hospital" (Complaint, ¶ 1).[1] Although plaintiff states that had been overseas for three and one-half years, he does not indicate how long he spent in the hospital or precisely what caused his hospitalization. However, plaintiff states that, by the time of his return to this country, he had been diagnosed with post-traumatic stress disorder (*id.*, ¶ 1).

On February 17, 2014, plaintiff contacted DHS, which "assigned" him to the BRC's Assessment Center in Brooklyn (*id.*, ¶ 2). According to a document authored by the BRC and attached to the complaint as "Exhibit 1," the Assessment Center is a DHS shelter serving adult homeless men (*id.*, p. 6).[2] In keeping with the BRC's stated mission of helping people "reclaim lives lost and restore hope and dignity by offering opportunities for health and self-sufficiency" (*id.*, p. 5), the shelter provides, among other things, "on-site case management services" (*id.*; Ex. 1, p. 6).

---

[1] Unless preceded by a roman numeral, paragraph numbers in parentheses refer to paragraphs in the "Statement of Claim" portion of plaintiff's complaint.

[2] Although the body of plaintiff's complaint refers to the exhibits attached thereto by number, plaintiff has not written numbers on the exhibits themselves. Since it is not always clear which exhibit is which, this Court will also cite to the page assigned to that document by the Court's Electronic Court Filing ("ECF") system.

2

On February 23, 2014, the shelter gave plaintiff a PPD skin test, which tests for tuberculosis (*id.*, ¶ 3). Although plaintiff alleges that "the results were 'read'" on February 24, 2014 (*id.*), the complaint does not indicate the result of the test. The complaint does allege, however, that plaintiff was forced to undergo a second and entirely unnecessary PPD test on May 21, 2014 (*id.*). While the complaint states that plaintiff told his "insurance provider" not to process payment requests relating to this test (*id.*), the complaint also states that the test was "ordered at medicaid expense" and opines that the test was a "waste of medicaid dollars" (*id.*).

At some point during the time plaintiff spent as a resident of the BRC's facilities, plaintiff met with Anna Hirohara, a "Staff Psychiatrist" (*id.*, ¶ 7). Plaintiff told her that he had been abused, neglected and raped, but she "did nothing," in part because the alleged rapist was "the son of a policeman" (*id.*, ¶ 7). Hinohara also ignored plaintiff's "20 years of pre-existing conditions," instead giving plaintiff a new diagnosis (*id.*). In addition, Hinohara declined to prescribe anything for plaintiff's insomnia for several months, then "decided to prescribe a sleeping medication that directly conflicts with [plaintiff's] normal medication" (*id.*). The complaint alleges that Hinohara was not merely negligent, but was affirmatively attempting to harm plaintiff (*id.*).

On March 12, 2014, a DHS Police Officer, Jason Perez, conducted a search of plaintiff's locker at the shelter (*id.*, ¶ 4; Ex. 4, p. 9). The search was supervised by a Sergeant Henry and witnessed by Sofia Zapata, a BRC employee (*id.*). According to a "Notice Regarding Locker Search," which is attached to the complaint as Exhibit 4 (*id.*, p. 9), plaintiff was not present at the time of the search. Plaintiff's locker contained, among other things, medication which had been given to him by the overseas hospital (*id.*, ¶ 4), but the medication was not confiscated (*id.*).

3

On April 17, 2014, plaintiff went to an HRA Office at 500 Dekalb Avenue, Brooklyn, to complain that the BRC and DHS were not "allowing [him] reliable postal delivery" (*id.*, ¶ 8; alterations added). Plaintiff demanded that his address be changed to "one place I can relaibl[y] receive mail" (*id.*; alterations added). The HRA employees "ignored" his demand, and refused to make any changes (*id.*). After arguing with the HRA employees "for over 5 hours," plaintiff suffered an asthma attack so severe that he had to be removed by ambulance and be hospitalized (*id.*).

Although it is unclear how long plaintiff remained in the hospital, it is clear that, sometime prior to May 15, 2014, he returned to the and was transferred from the BRC's Brooklyn facility to the BRC's Jack Ryan Residence in Manhattan. On May 15, 2014, plaintiff had an meeting with defendant Christopher Laing, a clinical supervisor at the Manhattan facility (*id.*, pp. 11-12). For reasons which are not explained, plaintiff called the Federal Bureau of Investigation ("the FBI") during the meeting to complain that Laing was harassing him (*id.*, ¶ 6). The following morning, plaintiff sent an e-mail regarding the meeting to ada.complaint@usdoj.gov, a copy of which is attached to the complaint as Exhibit 6 (*id.*, pp. 11-12). Although plaintiff's complaint refers to this e-mail as an "EEOC complaint" (*id.*, ¶ 6), Exhibit 6 contains a response from the EEOC advising plaintiff that he could not file a charge of discrimination via e-mail and listing websites he could consult for information regarding how to file a charge of discrimination (*id.*, Ex. 6, p. 11).

Around 6:50 on the evening of May 16, 2014, defendant Jasmine Tudd performed a search of plaintiff's locker at the Jack Ryan Residence (*id.*, ¶ 5; Ex. 5, p. 10). Tudd found and confiscated "Psych meds (Trazadone)" and an additional medication which had been prescribed

overseas (*id.*). Since the latter medication had not been confiscated during the prior search, the complaint asserts that Tudd's actions "seem[ ] to be direct retaliation" for his complaint regarding Liang (*id.*, ¶ 5).

On May 20, 2014, plaintiff took the subway to Lutheran Medical Center in Brooklyn, where he asked to be hospitalized (*id.*, ¶ 9). Plaintiff claimed that he was having a nervous breakdown "due to the conditions and lack of accommodation" at the Jack Ryan Residence, as well as the "physical, psychic, and medical abuse" which he suffered there (*id.* ). Plaintiff was subsequently transported by ambulance to Gracie Square Hospital in Manhattan, where he received a "very strong medication" which he "recognized as being appropriate for the treatment of schizophrenia" (*id.*).

Plaintiff was discharged from Gracie Square Hospital on May 27, 2014, and returned to the Jack Ryan Residence (*id.*, ¶¶ 9-10). Plaintiff was not given a bed, but instead spent the night in a lounge, sleeping on a couch which smelled of urine (*id.*, ¶ 10). Plaintiff asserts that the failure to provide plaintiff with a bed violates a DHS policy set forth in a January 9, 2001, memorandum which is attached to plaintiff's complaint as Exhibit 9 (*id.*, ¶ 10; Ex. 9, pp. 17-19).

On May 28, 2014, plaintiff was informed that he would have to spend that night in another shelter (*id.*, ¶ 11). Plaintiff further alleges that he was "extorted for simple property" by unspecified personnel at the Jack Ryan Residence, who stated that they would not return a "second-hand desktop PC and phone charger" which plaintiff had left in the residence on May 20, 2014, unless he took the bus to the other shelter (*id.*, ¶ 10). Plaintiff claims that he was entitled to 48 hours written notice of his transfer to another shelter and implies that his computer and phone charger were not returned (*id.*).

On June 2, 2014, plaintiff called New York City Adult Protective Services ("APS") to "report multiple instances of abuse upon a vulnerable adult from placement in a restrictive environment" (*id.*, ¶ 12). According to the complaint, plaintiff complained to APS of "denial of referrals for legal assistance, refusal to complete paperwork that would allow [him] independ[e]nt living and thus reasonable accommodation, etc etc." (*id.*). Plaintiff's calls were never answered (*id.*).

## *The Instant Action*

On June 6, 2014, plaintiff commenced this action by filing the complaint. That pleading names 13 defendants: the BRC and its director, Lawrence Rosenblatt; the HRA; the DHS; two "independent living specialists," Cynthia Dukas and Marilyn Fulton; Psychiatrist Anna Hinohara; Manager Jasmine Tudd; Clinical Supervisor Christopher Laing; and four "unknown employees." However, seven of these defendants—Rosenblatt, Dukas, Fulton, and the four "unknown employees"—are not mentioned in the "Statement of Claim" section of the complaint. An eighth—Laing— is mentioned in the "Statement of Claim" section, but is alleged only to have subjected plaintiff to "harassment" in some unspecified manner (*id.*, ¶ 6).

The complaint states that "jurisdiction of this court is invoked pursuant to 28 U.S.C. 1331 via 42 U.S. Code ... 12188 et seq." (Complaint, ¶ II). However, the complaint does not suggest that plaintiff was denied access to public accommodations provided by any of the defendants. Rather, plaintiff, who spent at least three and one-half months in shelters operated by the BRC, complains that he never "received any assistance obtaining independent housing in a less restrictive environment, translation of foreign medical records, referrals for legal assistance on a SSI claim or to release pertinent documentation from the Great State of Nebraska, [or] rape

6

counseling ... (*id.*, ¶ 1). In addition, plaintiff accuses both the BRC and the City defendants of "retaliating against [him] for making simple requests for accommodation" (*id.*; brackets added).

The "Remedy" section of the complaint contains nine demands for relief. Five of the nine seek money or property: money damages from all defendants for intentional infliction of emotional distress; $1,000 from DHS to compensate plaintiff for performing unspecified "functions of a government entity with no compensation;" either the return of, or restitution for, the computer and phone charger; and money to pay attorneys to find, inspect and, if necessary, seal or expunge "mental health records stemming from and influenced by ... DHS notes" (*id.*, ¶¶ IV(1), (2), (4), (7) & (8)). Two of the nine requests for relief request investigations: criminal investigations into the allegedly abusive and/or negligent acts and omissions of defendants Laing, Dukas, Fulton, and Hirohara and a "full investigation" into "Medicaid Fraud, Waste and Abuse" allegedly perpetrated by the BRC (*id.*, ¶¶ IV(5) & (9)). The final two requests seek injunctive relief: "restraining orders against all staff" who failed to report that he was being neglected or abused and an order directing that plaintiff be provided with hotel accommodations until HRA "pays for [an] appropriate studio apartment" (Complaint, ¶¶ IV(3) & (6)).

## DISCUSSION

### *Legal Standards*

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008). In reviewing a *pro se* complaint, a court is required to read the pleading liberally and to interpret it as raising the strongest arguments it suggests. *Id.* Nonetheless, even *pro se* complaints must allege "enough

7

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Federal Rules of Civil Procedure do not require detailed factual allegations, but demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has stated:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

*Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (citations omitted; brackets added in *Iqbal*).

If a district court determines that an action fails to state a claim on which relief may be granted, the court is required to dismiss the action. *See* 28 U.S.C. § 1915(e)(2). "Although the language of § 1915 is mandatory ... a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Cruz v. Gomez*, 202 F.3d 593, 597-98 (2d Cir. 2000) (quoting *Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam*)) (ellipses added in *Cruz*).

### *Plaintiff's Claims against the Individual Defendants*

In this case, the complaint contains no factual allegations with respect to seven of the ten individuals named as defendants in this action. Rosenblatt, Dukas, Fulton and the four "unknown employees" are listed in the caption, but not mentioned in the "Statement of Claim" section of the pleading. While the "Remedy" section of the complaint accuses Dukas, Fulton and

8

"unknown others" of "abuse, neglect, [and] disturbing the peace," these conclusory allegations do not suffice to state a claim against these defendants. These allegations do not allege specific acts or omissions by these defendants or suggest a basis for exercising federal jurisdiction over them.

Moreover, while the "Statement of Claim" section of the complaint contains factual allegations concerning Laing, the allegations concerning this defendant are too vague to state a claim. The complaint alleges only that on May 15, 2014, plaintiff called the FBI to complain of "harassment by Christopher Laing." Complaint, ¶ 6. The complaint does not allege what Laing did or failed to do that prompted plaintiff to contact the FBI. Accordingly, plaintiff's claims against defendants Rosenblatt, Dukas, Fulton, Laing and the four "unknown employees" are dismissed for failure to state a claim.

### *Plaintiff's Claims against the Institutional Defendants*

The complaint also fails to state a claim with respect to the BRC, HRA and DHS. The complaint specifically alleges that this action is brought "pursuant to 28 U.S.C. 1331 via 42 U.S. Code ... 12188 ...." Complaint, ¶ II. The first of these statutes—28 U.S.C. § 1331—provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The second statute—42 U.S.C. § 12188—contains the enforcement provisions for Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181, *et seq.* Accordingly, the language in paragraph II of the complaint suggests that plaintiff is attempting to state a claim under Title III of the ADA.

"Title III is not applicable to public entities." *Morales v. New York*, --- F. Supp. 2d ---, No. 2014 WL 2158979, at *5 (S.D.N.Y. May 22, 2014) (citing *Falchenberg v. New York State*

*Dept. of Educ.*, 642 F. Supp. 2d 156, 165-166 (S.D.N.Y. 2008)). Title III sets forth the following "[g]eneral rule":

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The term "public accommodation" is defined to include the "private entities" listed in 42 U.S.C. § 12181(7), "if the operations of such entities affect commerce." 42 U.S.C. § 12181(7). The term "private entity" is defined as "any entity other than a public entity (as defined in section 12131(1) of this title)." 42 U.S.C. § 12181(6). Under 42 U.S.C. § 12131(1), the term "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

In this case, two of the defendants named in the complaint—HRA and DHS—are public entities. Accordingly, plaintiff cannot advance Title III claims against these two defendants. Plaintiff may, however, be able to state a claim against these defendants under Title II of the ADA, which provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In light of plaintiff's *pro se* status, this Court construes the complaint as seeking to allege claims under Title II, as well as Title III.

"Titles II and III of the ADA prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell v.*

*National Bd. of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004). "In order for a plaintiff to establish a prima facie violation under these Acts, [he or] she must demonstrate (1) that [he or] she is a "qualified individual" with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [he or] she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or ... otherwise discriminated against by defendants, by reason of [his or her] disabilit[y]." *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)) (brackets added). Moreover, the only remedy available under Title II or Title III is injunctive relief, not money damages. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (only injunctive relief available as remedy for violation of Title II of Civil Rights Act of 1964); *Powell*, 364 F.3d at 86 ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages.").

In this case, the complaint does not allege facts to suggest that the BRC, HRA and DHS discriminated against plaintiff. The complaint states that, upon plaintiff's request, the HRA placed plaintiff in a BRC facility in mid-February 2014. Plaintiff has obviously been unhappy with the services provided by the BRC and has complained about them, but there is nothing in the complaint to suggest that the BRC ever refused to provide the services. Moreover, plaintiff does not allege what, if any, reasonable accommodation he required and was denied or what, if any, discrimination occurred on account of plaintiff's disability.

*Leave to Amend*

Since this Court cannot rule out the possibility that plaintiff could amend his complaint (1) to state a claims against defendants Rosenblatt, Dukas, Fulton, Laing and the four unknown employees identified in the caption of the complaint and (2) to state a Title II or Title III claim

11

against the BRC, HRA and DHS, this Court will grant plaintiff leave to amend his complaint. *See Cruz*, 202 F.3d at 597-98. In light of plaintiff's *pro se* status, this Court will briefly address issues which plaintiff should consider in amending his complaint.

First, plaintiff is advised that this Court cannot grant some of the relief which plaintiff seeks. Specifically, the Court is not empowered to conduct "[c]riminal investigations" or investigate medicaid fraud. Rather, "criminal prosecutions are within the exclusive province of the public prosecutor, who has complete discretion over the decision to initiate, continue or cease prosecution." *Solomon v. H.P. Action Ctr., H.P.D.*, No. 99 Civ. 10352 (JSR), 1999 WL 1051092, at *1 (S.D.N.Y. Nov. 19, 1999). To the extent that plaintiff has evidence of state-law crimes, such as attempted assault or harassment, he may contact the New York City Police Department. To the extent that plaintiff has evidence of medicaid fraud, he may contact the New York State Office of the Medicaid Inspector General.

Second, this Court is unaware of any federal Constitutional or statutory provisions which give plaintiff the right to "independent housing [with] a less restrictive environment," to receive rape counseling, to have foreign-language medical records translated, or to have counsel appointed to assist him with his SSI claims or document requests. While the Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law," this Clause has been interpreted as "a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989). There is no Constitutional "right to governmental aid, even where such aid may be necessary to secure life, liberty, or property

interests of which the government itself may not deprive the individual." *Id.* at 196 (citing cases).

There are exceptions to this general principle. For example, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199-200. The rationale for this exception is simple: "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the ... Due Process Clause." *Id.* at 200. That exception applies to involuntarily committed mental patients, *Youngberg v. Romeo*, 457 U.S. 307, 319 (1982), but not to homeless people who voluntarily choose to remain in shelters operated by government entities or contractors. Similarly, those who are not institutionalized do not have federal Constitutional or statutory rights to counseling, medical records, or counsel.

## *CONCLUSION*

For the reasons set forth above, plaintiff's claims against defendants Rosenblatt, Dukas, Fulton, Laing and the four "unknown employees" listed in the caption of the complaint are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. For the same reason, plaintiff's claims under Title II and/or Title III of the ADA are dismissed without prejudice. Plaintiff shall have thirty (30) days from the date of this Memorandum and Order in which to file an amended complaint. This amended pleading must allege facts sufficient to state a cognizable federal claim against each defendant listed in the caption of the complaint.

Plaintiff is advised that an amended complaint completely replaces the original, so plaintiff must include in the amended complaint all the necessary information that was contained in the original complaint. In addition, the amended complaint must be captioned as an "Amended Complaint" and bear the same docket number as this Memorandum and Order.

If plaintiff fails to comply with this order within the time allowed, partial judgment may be entered against plaintiff with respect to some defendants and/or claims. No summons shall issue at this time and all further proceedings shall be stayed for thirty (30) days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 269 U.S. 438, 444-45 (1962).

**SO ORDERED.**

s/SLT
/SANDRA L. TOWNES
United States District Court

Dated: August 18, 2014
      Brooklyn, New York